[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: SUMMARY JUDGMENT (NO. 130)
Plaintiff, Georgette Fountain, an employee of the State of Connecticut. Department of Income Maintenance, alleges in her amended complaint that on November 12, 1987, she slipped on ice and fell in the parking lot of her employer thereby sustaining severe and permanent injuries. She claims that at the time of the fall "the parking lot was in a dangerous CT Page 10293 condition in that it was icy and had not been sanded, roped off or posted with warnings of the dangerous condition." Amended Complaint, paragraph 2.
On the date of the alleged slip and fall, the premises located at 925 Housatonic Avenue in Bridgeport were in the possession of the State of Connecticut ("State" or "Tenant") by virtue of a lease signed by it and defendant D'Addario Construction Company Partnership ("D'Addario" or "Landlord").[1]
the owner of said premises. By the terms of the lease, the tenancy, which had commenced on September 5, 1986, was to continue for a period of five years. (Defendant's exhibit C.) Pursuant to the lease, D'Addario was to provide for the building maintenance and on-site, paved, lighted parking facilities, and the State was to provide for the groundskeeping and snow and ice removal. (Lease, paragraph 24.)
The issue is whether an employee of a tenant has a cause of action against the landlord under the "public use" doctrine for injuries sustained in a fall on ice on the demised premises which occurred one year and two months after commencement of the tenancy.
Defendant has moved for summary judgment on the grounds that it was not in exclusive possession and control of the premises on the date of the alleged fall, nor was defendant responsible for snow and ice removal in the parking lot where the alleged injury occurred. In support of its motion defendant submits its brief, a sworn affidavit from David D'Addario, a copy of the lease and a copy of a contract between the State and one Gwendolyn B. O'Hara for snowplowing, sanding and salting of all parking areas, driveways, walkways and steps at the demised premises.
Plaintiff has submitted a brief in opposition to the motion. Although she concedes that a landlord is not generally responsible for injuries which occur on demised premises, she claims that the public use exception to that rule applies under the above facts. She submitted one document, an affidavit, reciting that:
 1. I am over the age of eighteen and believe in the obligation of an oath.
 2. On the day of the accident, after I fell, the area in question was sanded by trucks of D'Addario.
Summary judgment is appropriate where no genuine issue of material fact exists and the movant is entitled to judgment CT Page 10294 as a matter of law. Conn. Practice Bk. 384; Connecticut National Bank v. Great Neck Development Co., 215 Conn. 143, 148
(1990). Since the burden of proof is on the party seeking summary judgment to show that there are no issues of material fact, the trial court must view the evidence presented in the light most favorable to the nonmoving party and give him the benefit of all favorable inferences. Connell v. Colwell,214 Conn. 242, 246-47 (1990); Catz v. Rubenstein, 201 Conn. 39, 49
(1986). When the movant has met his burden, the burden then shifts to the nonmovant to demonstrate the existence of some genuine issue of material fact. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578-79 (1990). Bald statements that issues of material fact exist are insufficient; the nonmoving party must present evidence disclosing such issues. Hammer, 214 Conn. at 578-79; Connell, 214 Conn. at 246. If under the same circumstances a party would be entitled to a directed verdict, then summary judgment should be granted. Connecticut National Bank, 215 Conn. at 578.
Plaintiff in the instant action is seeking damages against the Landlord for injuries sustained because of an alleged dangerous condition on the Landlord's property. The common law of the State of Connecticut has generally upheld the proposition that the possession and control of land, not its ownership, determine liability for any injuries incurred because of defects on the land. See Farlow v. Andrews Corp., 154 Conn. 220,225 (1966); Bergman v. Jacob, 125 Cann. 486, 488-89 (1939).
 [A] landowner, at least where he has made no agreement to repair, is not liable for injuries due to defective conditions arising upon the leased premises during the tenancy; he has surrendered possession and control of them to the tenant and has no right to enter to abate the conditions; and it is the tenant who is liable for injury arising from them.
Hahn v. Musante, Berman Steinberg Co., Inc., 130 Conn. 441,445 (1943); see also Pollack v. Gampel, 163 Conn. 462, 468
(1972). Thus, in Farlow the court held that in order to recover damages against a landowner, a business visitor who fell on an icy sidewalk was required to prove that the landowner had possession and control of the defective area; title alone is insufficient. Farlow, supra at 225. Plaintiff makes no allegation that defendant was in possession and control of the premises in question and concedes in her brief in opposition to the motion for summary judgment that the law generally does not hold a landlord liable for injuries occurring on demised premises. Plaintiff's Brief, page 3. CT Page 10295
Plaintiff's affidavit, recited above, does not create an issue of material fact on the issue of possession and control. Connecticut Practice Book 381 provides that:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
This two sentence affidavit falls far short of those requirements. See Evans Product Company v. Clinton Building Supply, Inc., 174 Conn. 512, 516-17 (1978), holding that an affidavit failed because it did not state that it was based on personal knowledge.
An exception to the general rule stated above, and relied upon by plaintiff herein, is the "public use" doctrine which was first stated in Webel v. Yale University, 125 Conn. 515
(1939). Under the test set forth in Webel a landowner may be liable to a business patron of its tenant if (1) the landowner leased the premises for a use open to the public; (2) the defect in question was in existence at the beginning of the lease; (3) the landowner knew or should have known of the defect; and (4) the landowner knew or should have known that the tenant could not reasonably be expected to remedy or guard against injury from the defect. Id. at 522-23; see also Pritchett v. Rosoff, 546 F.2d 463, 466-67 (2d Cir. 1976). The public use exception is not limited to structural defects but covers instances of disrepair as well. Corrigan v. Antupit,131 Conn. 71 (1944). The basis for imposing liability on the landlord under this doctrine is his knowledge of the public purpose for which the leased premises will be used, coupled with his awareness of conditions on the premises that could injure those members of the public who enter on the premises and the probability that the tenant will not make the needed repairs. Webel, 125 Conn. at 523.
Using the same rationale as Webel to impose liability, the court in Hahn v. Musante, Berman Steinberg Co., Inc., extended the public use doctrine to situations in which the dangerous condition was created by the landlord during the period of the tenancy, even if there was no dangerous situation at the time the premises were turned over to the tenant. Hahn v. Musante, Berman Steinberg Co., Inc., 130 Conn. 441 at 446
(1943). Thus, in Hahn the court held that the lower court was in error in directing a verdict for the landlord where the landlord had directed the construction of a platform from which CT Page 10296 the plaintiff fell and was injured during the time the State of Connecticut was leasing the premises for its unemployment compensation offices.
The public use doctrine as set forth in the cases above does not apply to the facts before the court in this action because the defect in question, namely, the icy condition of the parking lot, did not exist at the commencement of the State's tenancy, nor was the dangerous condition created by the landlord during said tenancy. The parties do not dispute the fact that the injury occurred on November 12, 1987. The evidence presented to the court by defendant indicates that the five-year leasehold began on September 5, 1986. Plaintiff does not dispute that date. In order for the defendant Landlord to be held liable for injuries sustained by virtue of an icy condition, that condition must have existed at the time the premises were put into the possession and control of the Tenant, i.e. on September 5, 1986, or alternatively, the condition must have been created by the defendant at some time subsequent to commencement of the tenancy. Plaintiff makes no allegation and produced no documents to sustain either proposition.
In a case similarly involving a slip and fall on snow and ice on premises used by the public and entirely within the control of the tenant, and where the tenant had the responsibility under the lease to remove snow and ice, Judge McDonald in Romani v. Silverio, 26 Conn. Sup. 230 (Sup.Ct. 1965), stated: "Under ordinary circumstances, this probably would be sufficient to support [defendant's] motion for summary judgment under prior decisions of this court. . . ." Id. at 231. The court there, however, denied summary judgment because the fall occurred on the very day the lessee's term of occupancy began and "the cause of the fall was alleged to be an accumulation of old ice and snow." Id. (original emphasis). Here there is no allegation that the ice which caused i plaintiff's fall was "old ice" which existed at the time the premises were turned over to the Tenant.
Plaintiff reasons in her brief that the Landlord should be held liable since he knew or should have known that a portion of the demised premises would become covered with snow and ice in the winter months, and, therefore, the icy and slippery condition of the parking lot should be considered a defect in the premises which existed at the time the lease was made. Such reasoning is faulty as the mere presence of snow and ice on some portion of the premises does not necessarily constitute a dangerous condition or defect of the premises. Further, the notice required of a landlord to establish a duty on his part "must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of CT Page 10297 that defect even though subsequently in fact producing it." Monahan v. Montgomery, 153 Conn. 386, 390 (1966); LaFaive v. DiLoreto, 2 Conn. App. 58, 60 (1984) . See also White v. E F Construction Co., 151 Conn. 110 (1963) (to incur liability for slip and fall on water on stairway resulting from rain entering open door, knowledge has to be of presence of water itself — not merely of fact that door had been left open for a period of time prior to fall.
The basis for imposing liability on the landlord is the likelihood of harm to the public when the public is allowed to enter the demised premises before the defect is corrected. If, there is no defect , the landlord cannot be held liable. See Prosser and Keeton on Torts, 63 , p. 440 (5th ed. 1984). ("Since the basis of liability is the likelihood that the public will be permitted to enter before the dangerous condition is changed, it is logical that it should be limited to the time within which there is reason to believe that it will remain unaltered)". To rule otherwise would require imposing upon the landlord a duty of continuing inspection which is not warranted under the case law of this State.
Since plaintiff has raised no genuine issues of material fact, defendant's motion for summary judgment is granted as a matter of law.
E. EUGENE SPEAR, JUDGE